UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRACY EDWARDS | : | CIVIL ACTION NO. |
|    Plaintiff, | : | 3:08-CV-1907 (JCH) |
| | : | |
| v. | : | |
| | : | |
| WILLIAM RAVEIS REAL ESTATE, INC., | : | SEPTEMBER 21, 2010 |
| | : | |
|    Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 49)**

**I.  INTRODUCTION**

Plaintiff, Tracy Edwards ("Edwards"), brings this action against defendant, William Raveis Real Estate, Inc. ("Raveis"), for damages for injuries she sustained as a result of her termination, which she alleges was because of her age.  Edwards' remaining claim is pursuant to the Age Discrimination and Employment Act ("the ADEA"), 29 U.S.C. § 621 et seq.[1]

Defendant moves the court under Fed. R. Civ. P. 56, seeking summary judgment in its favor.  For the following reasons, the court denies defendant's Motion for Summary Judgment.

---

[1] This court previously dismissed a second claim pursuant to Connecticut law.  See Edwards v. William Raveis Real Estate, Inc., Civil Action No. 08-cv-1907, 2009 WL 1407233 (D. Conn. May 19, 2003).

1

## II.  FACTUAL BACKGROUND[2]

Raveis is a real estate firm with offices throughout the Northeast, including Connecticut, Massachusetts, and Rhode Island.  See L.R. 56(a)(1) Stmt. at ¶¶ 4, 14 (Doc. No. 51).  In June 2004, Edwards was hired to work for Raveis in the role of Purchasing Director.  Id. at ¶¶ 6, 8, 10.  At the time of her hire, Edwards was forty-six years old.  Id. at ¶ 5.  Edwards remained in this position until December 2005.  Id. at ¶ 14.  In January of the following year, she was promoted to Vice President of Facilities and Purchasing, id at ¶ 16, a position she held until she was fired in April 2008, id. at ¶ 46.  At the time of her termination, Edwards was fifty years old.  Id. at ¶ 26

During her time at Raveis, Edwards' performance appears to have exceeded her employers' expectations.  See id. at ¶ 15; L.R. 56(a)(2) Stmt. at ¶ 15 (Doc. No. 58).  In addition to her promotion, Edwards received multiple pay raises and only positive performance reviews.  See L.R. 56(a)(1) Stmt. at ¶¶ 15, 24; L.R. 56(a)(2) Stmt. at ¶ 15; Email from John Davis, Chief Fin. Officer, William Raveis Real Estate, Mortg. & Ins., to Debi Stefan (July 13, 2007, 11:54 EST), Ex. A to L.R. 56(a)(1) Stmt. ("Tracy has gone above and beyond in her efforts managing the facilities and purchasing groups.  She puts endless hours of overtime in, makes herself available 24/7 for office emergencies and has done a great job managing multiple, major facility projects with limited

---

[2] For the purposes of this section, undisputed facts will be cited to Raveis's Local Rule 56(a)(1) Statement (Doc. No. 51).  At times, Edwards' Local Rule 56(a)(2) Statement asserts, "No response is required, as this statement does not contain any facts that are material to the determination of Defendant's motion."  See, e.g., L.R. 56(a)(2) Stmt. at ¶¶ 1, 12, 34 (Doc. No. 58).  Edwards' 56(a)(2) Statement also occasionally fails to admit or deny Raveis's statement.  See, e.g., id. at ¶ 52.  Local Rule 56(a)(1) states, "All material facts set forth in [defendant's Local Rule 56(a)(1) Statement] and supported by the evidence will be deemed admitted unless controverted by" plaintiff's Local Rule 56(a)(2) statement.  See D. Conn. L. Civ. R. 56(a)(1).  Therefore, all material facts elaborated in Raveis's Local Rule 56(a)(1) Statement that Edwards has failed to deny are deemed admitted.

resources."). At the time of her employment termination, Edwards annual base salary was $92,700, with a $10,000 attainable bonus, L.R. 56(a)(1) Stmt. at ¶¶ 23-24, a sixteen percent increase over her starting salary, see Letter from Debi Stefan, VP of Human Res., William Raveis Real Estate & Home Servs., to Tracy Edwards (May 18, 2004), Ex. A to L.R. 56(a)(1) Stmt.

A. Edwards' Supervisors

During her employment at Raveis, Edwards reported primarily to John Davis ("Davis"), the Executive Vice President and Chief Financial Officer of the company. See L.R. 56(a)(1) Stmt. at ¶¶ 8, 11. Edwards' original position as Purchasing Director had not existed prior to her hire, and her duties were formerly performed by Davis. See id. at ¶ 12. Her duties as Purchasing Director included, among other things, purchasing goods and services, negotiating and managing contracts, and communicating with vendors. See id. at ¶ 13. Her Vice President position was a consolidation of two positions: Purchasing Director and Manager of Facilities. See id. at ¶ 17. Her Facilities responsibilities included, among other things, overseeing the facilities' maintenance and security, managing the corporate inventory of furniture and equipment, and supervising third-party contractors for services such as landscaping and snow removal. See id at ¶ 22; William Raveis Real Estate Manager of Facilities Job Description, Ex. A to L.R. 56(a)(1) Stmt.

As Vice President, Edwards' position was subordinate to at least two other people at Raveis: William Raveis, Jr. ("Wm. Raveis"), the CEO, and Carolyn Deal ("Deal"), the President of the company at the time of Edwards' employment. See L.R. 56(a)(1) Stmt. at ¶¶ 3, 9. While she did not report to him, Wm. Raveis was directly

involved in the decisions to hire, promote, and fire Edwards.  See id. at ¶¶ 9, 18, 46; L.R. 56(a)(2) Stmt. at ¶ 18.  Deal interviewed Edwards, but was not involved in the decision to fire her from the company.  See L.R. 56(a)(1) Stmt. at ¶¶ 9, 46.

### B. Edwards' Fiftieth Birthday

Edwards turned fifty on December 3, 2007.  Id. at ¶ 26.  She claims to have been close-lipped about her age, especially at work.  Decl. of Tracy Edwards at ¶ 4 ("Edwards Decl.") (Doc. No. 57).  Close to the date of her birthday, Edwards told a number of people that she was about to turn fifty.  See L.R. 56(a)(1) Stmt. at ¶ 27; L.R. 56(a)(2) Stmt. at ¶ 27.  Edwards describes these employees as friends and says she did not intend for everyone at work to know her age.  See L.R. 56(a)(2) Stmt. at ¶ 27; Edwards Decl. at ¶ 4.  However, Deborah Stefan ("Stefan"), the Vice President of Human Resources, decided to throw Edwards a birthday party.  See L.R. 56(a)(1) Stmt. at ¶ 28.  As part of the celebration, Stefan placed age-related gag decorations around the office and a large card shaped like the Energizer Bunny (called a "Critter Card") which was placed on the front lawn declaring "TRACY STILL GOING AT 50!"  L.R. 56(a)(1) Stmt. at ¶¶ 29-30; L.R. 56(a)(2) Stmt. at ¶ 30; Ex. 10 to L.R. 56(a)(2) Stmt.

Edwards appeared to enjoy the party, telling Stefan she thought everything was great, and she even pretended to use a walker at one point.  See L.R. 56(a)(1) Stmt. at ¶¶ 29, 31.  However, Edwards states that she was embarrassed and upset but thanked Stefan because Edwards believed Stefan meant well.  See L.R. 56(a)(2) Stmt. at ¶ 31; Edwards Decl. at ¶¶ 5-6.  At the party, Raveis employees referred to Edwards as "very old," "really, really old," and "over the hill," among other comments.  Edwards Decl. at ¶ 5.  Similar parties had been thrown that year for two other employees, William Gamelli,

4

a senior vice president, and Kent Hanley, an executive vice president, who are still both employed at the company. See L.R. 56(a)(1) Stmt. at ¶ 33.

At some point within a month of her birthday, Edwards claims that Davis instructed her to train Lorraine Megenis ("Megenis"), the Vice President of Operations, on the ins and outs of the Facilities and Purchasing Department. See Edwards Decl. at ¶ 7. She alleges that she trained Megenis throughout the first few months of 2008. See id. at ¶ 8. Raveis disputes this characterization and claims Megenis only assisted Edwards with a couple of discrete projects. See L.R. 56(a)(1) Stmt. at ¶ 59.

### C. Edwards' Termination

Starting in October 2007, Raveis began to experience a significant slowdown in business. See id. at ¶¶ 34-36, 38-39, 42. The company began to terminate employees in what they termed Phase I Reduction in Force ("RIF") in February and March 2008. See id. at ¶ 41; L.R. 56(a)(2) Stmt. at ¶ 41. According to Raveis, Edwards was terminated as a part of Phase II RIF in April 2008, a decision which was allegedly made in a phone conversation between Wm. Raveis and Davis sometime after March 17, 2008. See L.R. 56(a)(1) Stmt. at ¶¶ 46-47. Raveis claims that no intention had been formed to fire Edwards until that conversation. See id. at ¶ 47.

Shortly after Edwards was terminated, Megenis assumed Edwards' title and job responsibilities. See id. at ¶¶ 52-53. However, she also continued her responsibilities with respect to Operations. See id. at ¶ 56. Meganis was forty-six years old at the time, id. at ¶ 52, four years younger than Edwards, and, according to Edwards, Megenis was less experienced and less qualified, see L.R. 56(a)(2) Stmt. at ¶ 52. Megenis had a lower salary than Edwards and received a $5,000 annual increase as part of the

5

change in position. L.R. 56(a)(1) Stmt. at ¶ 56. Her total annual salary at the time was $73,000. Id. Accordingly, with Edwards' termination, Raveis expected to save approximately $87,700 per year (Edwards' salary less Megenis's raise). Id. at ¶ 57.

## III. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Fed R. Civ. P. 56(c); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir.

6

2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV. DISCUSSION

The ADEA prohibits employers from taking an adverse action against an employee "because of such individual's age." 29 U.S.C. § 623(a). In order to survive summary judgment, Edwards must have sufficient evidence to convince a reasonable jury that age was "the 'but-for' cause" of her termination. See Gross v. FBL Fin. Servs., Inc., 129 S. Ct. 2343, 2352 (2009). Unlike other discrimination statutes, Edwards cannot carry her burden of proof under the ADEA by establishing a mixed-motive for her firing. Id. at 2350.

Edwards has met her burden, if she can point to direct evidence in support of her claim. See Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 757 (2d Cir. 2004) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985)). However, despite claiming she does, Edwards does not have any direct evidence. Edwards instead points the court to circumstantial evidence of discrimination. The Second Circuit utilizes the burden shifting framework found in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze circumstantial evidence of age discrimination. See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 105-06 (2d Cir. 2010). First, Edwards must be able to establish a prima facie case of discrimination. See id. at 106. To do this, she must demonstrate that (1) she was a member of the protected group, (2) she qualified for her position, (3) she experienced an adverse employment action, and (4) the circumstances surrounding the action give rise to an inference of

7

discrimination.  Id. at 107.  Raveis concedes that Edwards satisfies the first three prongs of this test.  See Mem. of Law in Support of Def.'s Mot. for Summ. J. at 24 ("Def.'s Mem.") (Doc. No. 50).  However, it argues that the circumstances of Edwards' termination do not give rise to an inference of discrimination.  Id.

If Edwards has established her prima facie case, the burden of persuasion shifts to Raveis to offer a nondiscriminatory reason for Edwards' termination.  See Gorzynski, 596 F.3d at 106 (citing McDonnell Douglas, 411 U.S. at 802).  Raveis points to its serious financial setbacks beginning in October 2007, and asserts that these setbacks eventually led to the decision to fire Edwards.  See Def.'s Mem. at 33-36.  Because Raveis has provided evidence supporting this nondiscriminatory rationale, the burden returns to Edwards to demonstrate that this reason is merely a pretext and that, but for her age, she would not have been fired.  See Gorzynski, 596 F.3d at 107.  For the reasons set forth below, the court finds that the evidence is sufficient for a reasonable jury to find that, but for Edwards' age, Raveis would not have fired her and that Raveis's nondiscriminatory rationale is a pretext for its discrimination.

    A.    Direct Evidence

"[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination."  Trans World Airlines, 469 U.S. at 121.  A plaintiff may be able to "side-step [a] lack of circumstantial evidence" of discrimination by offering direct evidence of the same.  Sanders, 361 F.3d at 757.

In the instant case, Edwards argues that she has presented direct evidence.  However, none of the evidence she presented directly evidences discrimination.  Typically direct evidence will consist of an admission by the defendant through a facially

8

discriminatory policy or in an official piece of writing.  See, e.g., Trans World Airlines, 469 U.S. at 121 (finding facially discriminatory policy to be direct evidence); Norflet v. John Hancock Fin. Servs., Civ. No. 3:04cv1099, 2007 WL 2669017, at *4-6 (D. Conn. Sept. 6, 2007) (same).  Edwards fails to produce "a smoking gun," clearly indicating discrimination.  See Holcomb v. Iona Coll., 521 F.3d 130, 141 (2d Cir. 2008); see also Sanders, 361 F.3d at 757 (finding statements made by defendant did not establish discriminatory intent "conclusively" and thus failed to constitute direct evidence).  Edwards instead presents age-related comments made in the context of a birthday party, the difference in age and experience between herself and Megenis, statistical information, and the suspect timing of Megenis's training.  Edwards does not present any evidence that age discrimination was an explicit policy of Raveis, nor does she present statements made by Davis or Raveis admitting their discriminatory intent.  Her evidence is the very definition of circumstantial: circumstances which might give rise to an inference of discrimination, rather than evidence directly indicating discrimination.

  B. <u>Inference of Discrimination</u>

Edwards presents to the court a variety of evidence that she claims indicates discrimination.  The courts finds that, when this evidence is considered on the whole, it is sufficient to establish an inference of discrimination, particularly in light of Raveis's tendency to fire older employees and the suspect timing of Megenis's training in Edwards' department.  The burden at this stage "is not a heavy one," Gorzynzki, 596 F.3d at 107, and Edwards has met it here.

  1. Knowledge of Age Difference

As a threshold matter, Edwards cannot support her inference of age

discrimination without evidence that Wm. Raveis and Deal were <u>aware</u> of the age difference between her and Megenis when they made their decision to fire Edwards. <u>Woodman v. WWOR-TV, Inc.</u>, 411 F.3d 69, 83-90 (2d Cir. 2005). Edwards need only present circumstantial evidence of knowledge, <u>see id.</u> at 83, and the court finds that there is a sufficient evidence to that effect.

Edwards has provided strong evidence that her supervisors were aware of her age. Davis admitted as much at deposition, <u>see</u> Dep. of John Davis at 186 ("Davis Dep."), Ex. 3 to Decl. of Corey Stark ("Stark Decl.") (Doc. No. 56), and a jury could reasonably find that Wm. Raveis was aware of her age, given that Edwards' fiftieth birthday was publicly celebrated and decorations declaring her age were strewn throughout Raveis's offices. <u>See</u> L.R. 56(a)(1) Stmt. at ¶¶ 28-32. However, there is a question as to whether Wm. Raveis and Deal were aware of Megenis's age. Both Wm. Raveis and Deal claimed at deposition to have been unaware of Megenis's age. <u>See id.</u> at ¶ 54. Nonetheless, they both admitted having access to Megenis's work file, which included her age, and they also conceded that, in her thirteen years at the company, Megenis never had a fiftieth birthday party. <u>See</u> L.R. 56(a)(2) Stmt. at ¶ 54. This evidence, when considered in a light most favorable to Edwards, supports her claim that Wm. Raveis and Deal were either aware of or perceived an age difference between Edwards and Megenis.

2. Age-Related Decorations and Comments

In order to establish an inference of discrimination, Edwards cites to events surrounding the fiftieth birthday party that Raveis threw in her honor. Age-related gag decorations were placed throughout the office, and multiple comments regarding her

age were made about her and to her.  See Edwards Decl. at ¶ 5.  "[T]he more remote and oblique . . . remarks are in relation to the employer's adverse action, the less they prove that action was motivated by discrimination."  Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007).  Edwards' argument that the comments and decorations indicated a discriminatory state of mind is therefore bolstered by the closeness in timing of the party and her being instructed to train Megenis.  However, most of these comments are not attributed to her supervisors, and they were all made in the context of a birthday party and thus none of the comments "evince[] a discriminatory state of mind."  Id.

While the court may question the wisdom of throwing birthday parties at offices with age-related gag decorations, the throwing of such a party, on its own, does not create an inference of discriminatory intent on the part of Raveis.  At least two other such parties had been thrown in the office that year, including very similar decorations.  See L.R. 56(a)(1) Stmt. at ¶ 33.  The comments made at the party—that Edwards was "very old," "really, really old," and "over the hill"—do not supply the necessary inference either, given the context and the relatively innocuous content.  While several of the comments are attributable to Edwards' supervisors, most of them are not, and only one comment is attributed to one of the two people responsible for the decision to terminate Edwards.  Davis appears to have written, "Tracy, happy birthday, welcome to the 50-plus club," on Edwards birthday card.  Dep. of Tracy Edwards at 238 ("Edwards Dep."), Ex. H-7 to L.R. 56(a)(1) Stmt.  This comment, however, does not indicate any discriminatory intent on the part of Davis.  While "[t]he choice between plausible interpretations of [defendant's] remarks is a question of fact to be decided by a jury,"

Sassaman v. Gamache, 566 F.3d 307, 313 (2d Cir. 2009), the court finds these decorations and comments are not ambiguous and, given their context, cannot support an inference of discrimination.

   3.  Difference in Age

Edwards points to the age difference between her and Megenis as an indication of discriminatory intent. The court notes, however, that "[t]he replacement of an older worked with a younger worker or workers does not itself prove unlawful discrimination." Fagan v. N.Y. State Electric & Gas Corp., 186 F.3d 127, 134 (2d Cir. 1999). The court finds that the difference in age in this case does not support an inference of discrimination.

Megenis was only four years younger than Edwards at the time of Edwards' firing and Megenis's subsequent promotion. See L.R. 56(a)(2) Stmt. at ¶ 52. "[A]n inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger." O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996). However, the replacement by someone "substantially younger" may lead to such an inference. Id. There is no bright line for what is, on the one hand "insignificant" or on the other "substantial." However, differences of more than ten years have been held to be substantial, whereas those of fewer than five have been held to be insignificant. See McInnis v. Town of Weston, 375 F. Supp. 2d 70, 82 (D. Conn. 2005) (citing McNulty v. N.Y.C. Dep't of Fin., 45 F. Supp. 2d 296, 299 n.3 (S.D.N.Y. 1999)).

Under this standard, the four year age difference between Edwards and Megenis might well undercut Edwards' claim of age discrimination. The court finds it relevant,

however, that Edwards had just turned fifty at the time she was asked to train Megenis. While four years might be a minimal difference in age, the difference between someone "in their forties" and someone "in their fifties" could appear much more pronounced to a decision-maker. Cf. <u>Nembhard v. Mem'l Sloan Kettering Cancer Ctr.</u>, 104 F.3d 353 (2d Cir. 1996) (affirming the finding of an inference of age discrimination where plaintiff was replaced by someone one year younger). The court therefore finds that the difference in age between Megenis and Edwards neither supports nor disables an inference of age discrimination.

### 4. Difference in Experience

Edwards has not presented evidence sufficient to suggest that Megenis was less experienced or qualified than Edwards. While Edwards repeatedly characterizes Megenis's promotion as a "replacement," <u>see, e.g.</u>, L.R. 56(a)(2) Stmt. at ¶¶ 48-49, this is not entirely accurate. Edwards has presented no evidence disputing the fact that Megenis's new position was a consolidation of Edwards' position and Megenis's old position. <u>See</u> L.R. 56(a)(1) Stmt. at ¶ 56; L.R. 56(a)(2) Stmt. at ¶ 56. While there may be evidence indicating Megenis was less experienced in Facilities and Purchasing than Edwards, <u>see</u> Edwards Dep. at 147-48, there is no evidence suggesting that Megenis was less qualified than Edwards to perform the tasks of the newly consolidated position. Specifically, Edwards has provided no evidence that she had <u>any</u> experience in Operations (Megenis's department), and therefore would be the preferred candidate for any new position resulting from the consolidation of departments.

Megenis had been with Raveis for more than thirteen years at the time of Edwards' termination (nine years longer than Edwards), and had been a Vice President

13

for only one year less than Edwards.  See L.R. 56(a)(1) Stmt. at ¶ 55.  Megenis appears to have substantial experience in the tasks associated with her original position in Operations.  See id.  In addition to this fact, Raveis has produced evidence that Megenis had some experience in Facilities and Purchasing prior to her promotion.  See id. at ¶ 58.  Edwards has not countered this evidence with anything more than conclusory claims that "Edwards had significantly more experience" than Megenis.  L.R. 56(a)(2) Stmt. at ¶ 58.  The court finds that this is insufficient to provide support for an inference of discrimination.

        5.      Same Actor

Raveis directs the court's attention to the fact that Edwards was a member of the class covered by the ADEA (over forty years old) at the time of her hire.  Generally speaking, "[w]hen the same actor hires a person already within the protected class, and then later fires that same person, it is difficult to impute to [that actor] an invidious motivation."  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000).  This "same actor" inference is permissive, not mandatory, and is not a substitute for factual inquiry.  See Collins v. Conn. Job Corps, 113 F. Supp. 2d 262, 251 (D. Conn. 2010).  In the instant case, the court finds this inference inapplicable.

The "same actor" inference is premised on the notion that it is unlikely that an employee who hires someone who is in a protected class would later fire her on the basis of that status.  This principle, however, depends on an assumption that the employer is aware of the employee's protected status at the time of her hire.  Wm. Raveis and Davis have both admitted at deposition that they were unaware of Edwards' age at the time they interviewed and hired her.  See Davis Dep. at 73; Dep. of William

14

Raveis, Jr., at 46 ("Wm. Raveis Dep."), Ex. H-8 to L.R. 56(a)(1) Stmt. It would therefore be inappropriate to rely on the "same actor" doctrine in this case.

The court further notes that the "same actor" principle is less persuasive in the context of age discrimination. Edwards may have been over forty at the time of her hire, but she was even older at the time of her termination. While the ADEA has chosen a bright line for when an employee is old enough to qualify for an age discrimination claim, it does not suggest that all age discrimination will occur in reference to that line. If an employer intentionally discriminates against employees who are over fifty, those employees cannot be denied a claim because they were employed at the age of forty.[3]

### 6. Firing of Others

Edwards additionally points to some statistical information to support an inference of discrimination. See, e.g., Phillips v. Centrix, Inc., Civil Action No. 3:07-cv-01455, 2009 WL 378586, at *3 (D. Conn. Feb. 13, 2009) (finding statistical deviation sufficient to support inference of discrimination). Raveis employed a little over 200 employees in 2008. See Aff. of Austin Kim at ¶ 11, Ex. 15 to Stark Decl. During that period, the average employee's age was approximately forty-eight. L.R. 56(a)(1) Stmt. at ¶ 51. While Raveis's workforce was, on average, not significantly younger than fifty, the evidence suggests that Raveis's layoffs skewed older. Approximately twenty-six percent of Raveis employees were under the age of forty, but only eleven percent of

---

[3] The Second Circuit has certainly applied the "same actor" inference in the context of ADEA. See, e.g., Carlton, 202 F.3d 129. However, it has held that this inference is "less compelling when a significant period of time elapses between the hiring and firing." Id. at 138. The court here finds that the inference is also less compelling when plaintiff has categorically aged since the time of her hire (Edwards now being "in her fifties" instead of "in her forties").

15

those terminated were under forty. See Stark Decl. at ¶ 22. No employees under the age of forty appear to have been fired in "Phase I" of Raveis's layoffs. Id. at ¶ 21. Additionally, half of the employees terminated during both phases of termination were over fifty and a third were over sixty. Id. at ¶¶ 23-24. While this evidence is weakened by the relatively small sample size, the court finds that it is substantial enough a difference to contribute to an inference of discrimination.

### 7. Timing of Decision

Finally, Edwards points to the timing of the decision to lay her off as an indication of discriminatory intent on the party of Raveis. While the parties dispute when this decision was made, plaintiff argues that Davis's instruction to Edwards to train Megenis implies that a decision to fire her had been made at that time. According to Edwards this decision was made shortly after her birthday party and, as a reasonable jury could find, shortly after Davis and Wm. Raveis became aware of her age.[4] See Davis Dep. at 186.

This factual dispute is very much the crux of Edwards' claim. If a reasonable jury were to credit Edwards' claim that Davis instructed Edwards to train Megenis in December, it could infer from such timing an intent to fire Edwards and replace her with Megenis. Given the timing of this decision, shortly after Wm. Raveis and Davis learned Edwards was fifty, a reasonable jury could infer that the intention was formed because of Edwards' age.

---

[4] Davis attended Edwards' birthday party. See Davis Dep. at 186. Wm. Raveis denies that he ever knew Edwards' age. Wm. Raveis Dep. at 120. Both sides agree that Wm. Raveis did not know Edwards' age at the time of her hire. See id. at 46. However, given the public nature of the birthday party a reasonable jury could infer that he became aware of her age at that time. See L.R. 56(a)(1) Stmt. at ¶¶ 28-32.

C. <u>Nondiscriminatory Reason</u>

Having found sufficient evidence to establish a <u>prima facie</u> case of discrimination, the burden of persuasion shifts to Raveis to present evidence of a nondiscriminatory reason for Edwards' termination. <u>See</u> <u>Gorzynski</u>, 596 F.3d at 106. To that end, Raveis has produced testimony from Davis that the decision to fire Edwards was based on the financial troubles Raveis was experiencing in 2007 and 2008. <u>See</u> L.R. 56(a)(1) at ¶ 47. In support of that claim, Raveis produced substantial documentation of their company's financial state. <u>See</u> <u>id.</u> at ¶¶ 34-45. The court finds this evidence sufficient to satisfy defendant's burden of persuasion.

D. <u>Pretext</u>

Edwards must rebut Raveis's nondiscriminatory reason and be able to prove that the reason presented is a mere pretext for discrimination. <u>See</u> <u>Gorzynski</u>, 596 F.3d at 107. Two pieces of evidence support an inference of pretext in this case. First, Raveis's supposed reason for terminating Edwards has been inconsistent. Second, the timing of the decision to fire Edwards suggests that the reason put forth was a pretext.

1. Shifting Explanations

Raveis cites to only one nondiscriminatory reason for terminating Edwards in its memoranda, namely the economic state of the company. However, in Wm. Raveis's deposition, the CEO contended that the reason he sought to terminate Edwards' employee was due to her poor performance. <u>See</u> Dep. of William Raveis, Jr., at 91, Ex. 5 to Stark Decl. Despite this explicit statement from Wm. Raveis, defendant does not proffer this reason and instead claims, "The decision to terminate Edwards' employment was financial." L.R. 56(a)(1) Stmt. at ¶ 48.

17

"Inconsistent or even post-hoc explanations for a termination decision may suggest discriminatory motive." Weiss v. JPMorgan Chase & Co., 332 F. App'x 659, 663 (2d Cir. 2009). The Second Circuit has clearly held that such inconsistencies are sufficient on their own to infer that a stated reason is, in fact, a pretext. See Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 98 (2d Cir. 1999). A jury considering these discrepancies might reasonably question the veracity of the rationale put forth. See Carlton, 202 F.3d at 137; see also EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994) (finding inconsistent testimony of one of the decision-makers reasonably indicated pretext).

Here, Raveis's legal arguments are incongruent with the statements made by one of its two primary decision-makers. Rather than pointing to Edwards' higher salary or praising Megenis's experience, Wm. Raveis stated that the reason he decided to terminate Edwards' employment was because of her poor performance. This explanation is especially suspect in light of the uncontroverted evidence of Edwards' good performance at her job. See L.R. 56(a)(1) Stmt. at ¶¶ 15, 24; L.R. 56(a)(2) Stmt. at ¶ 15. The court finds that this inconsistency is sufficient for a reasonable jury to infer pretext.

### 2. Timing of Decision

According to Raveis, the decision to terminate Edwards was made in a telephone call between Wm. Raveis and Davis in March 2008, just weeks before Edwards was terminated. See L.R. 56(a)(1) Stmt. at ¶ 47. Raveis claims that this was because its financial situation had become so bad that Wm. Raveis and Davis felt they could no longer afford to retain Edwards as an employee. See id. at ¶ 48. However,

Edwards has presented evidence that, if credited, supports an inference that the decision was actually made much earlier than that. Specifically, Edwards claims that Davis instructed her to train her replacement in December 2007. See Edwards Decl. at ¶ 7. If the facts are examined in a light most favorable to Edwards, Raveis's explanation <u>must</u> be a pretext, because the supposed reason for firing Edwards post-dates the actual decision to do so by several months.

The court notes that evidence suggesting a pretext may not on its own be sufficient to withstand a motion for summary judgment. There must be evidence supporting Edwards' claim that the <u>actual</u> reason for dismissal was discriminatory. <u>See</u> <u>Norville</u>, 196 F.3d at 98. While Edwards' evidence is somewhat tenuous, the court is not prepared to say that a reasonable jury could not find in her favor. In light of the evidence in support of Edwards' <u>prima facie</u> case—particularly in light of the fact that Raveis has terminated a disproportionate number of older employees and in light of the suspect timing of the decision to train another employee for Edwards' job and ultimately to fire Edwards—a jury could reasonably find Edwards would not have been fired, but for Raveis's consideration of Edwards' age.

**V.   CONCLUSION**

For the foregoing reasons, the court denies Defendant's Motion for Summary Judgment (Doc. No. 49).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 21st day of September, 2010.

                                               /s/ Janet C. Hall
                                               Janet C. Hall
                                               United States District Judge